Filed 8/6/14  P. v. Evans CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL EVANS,<br><br>    Defendant and Appellant. | D064810<br><br><br><br>(Super. Ct. No. SCS262282) |


APPEAL from a judgment of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Michael Evans guilty of three crimes occurring on January 1, 2013: (1) two counts of spousal abuse (Pen. Code[1], § 273.5, subd. (a)); and (2) one count of vandalism (§ 594, subd. (a)). The jury also found Evans guilty of one count of dissuading a witness on February 1, 2013 and one count of dissuading a witness on February 5, 2013. (§ 136.1, subd. (a)(1).) The jury acquitted Evans of additional charged crimes occurring on January 21, 2013. In a bifurcated proceeding, Evans admitted five prison priors.

The court imposed a sentence of seven years four months, but then suspended execution of the sentence and granted probation on the condition that Evans comply with probation conditions and complete a two-year residential program at Delancey Street Foundation.

On appeal, Evans contends: (1) he was improperly convicted of two separate counts for spousal abuse that occurred on the same date; (2) he was improperly convicted of two separate counts of attempting to dissuade a witness that occurred on two separate dates; and (3) to the extent he was properly convicted of the multiple counts, the court violated section 654 by imposing sentences on both spousal abuse convictions, both dissuading witness convictions, and on the vandalism count. We reject these contentions and affirm.

---

[1]     All further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, Evans married Yanira Zendejas. They lived in Zendejas's house in Chula Vista. Zendejas had three children from prior relationships, but the children were living with Zendejas's sister because of child protective issues. Zendejas had a history of drug and alcohol abuse. The charged crimes occurred on several different dates. We summarize below the relevant facts occurring on each of these dates.

*January 1, 2013*

On January 1, 2013, Zendejas had her children for an overnight visit. At about 6:00 p.m., Zendejas and Evans engaged in an argument. During the argument, Evans slapped Zendejas in the face, causing a bruise under her left eye. Evans told her he was going to knock her teeth out and then threw an empty alcohol bottle at her, resulting in a bruise to the back of her leg. Evans also scratched Zendejas's hand and injured her chest while he grabbed her cell phone from her.

Zendejas did not remember the exact order of these physical actions against her. She said Evans committed these acts during the same argument, which took "[m]aybe like an hour and a half."

Evans then drove the children to Zendejas's sister's house. While he was gone, Zendejas went to a pay phone (because Evans had taken her cell phone) and called her sister. Zendejas was crying and told her sister that Evans had "beat her up" and took her cell phone away. Zendejas's sister called the police.

When Evans returned home, he did not have his keys and Zendejas would not open the door. Evans forcefully pushed the door and the door broke off the hinges. The couple then continued to argue and Evans slapped her again in the chest.

As the police officers arrived, Evans left through the back door. Zendejas appeared to have been crying. She had visible injuries, including a bruise under her left eye, scratches on her hand, and redness and bruising to her neck area, face, and chest. Zendejas also had a large bruise on the back of her leg from being hit with the bottle.

Several weeks later, police officers responded to a call regarding problems at Zendejas's home. The police officers found Evans at the home and arrested him.[2]

*February 1, 2013*

On February 1, 2013, Evans called Zendejas from jail. The lengthy phone call was recorded and played for the jury. Evans repeatedly told Zendejas not to show up for the upcoming preliminary hearing.

*February 5, 2013*

Four days later, on February 5, Evans again called Zendejas from jail. That recorded conversation was also played for the jury. Zendejas told Evans she had been served with a subpoena for a February 6 hearing and she was required to attend the court hearing or she would be served with a warrant. Evans told her not to attend, saying they could not "make you go," and that "If you go, I'm done. . . . We're done." Evans told her to just "tell 'em I wasn't there." He also said, "[y]ou promised me you would not go on

---

[2]    Because the jury acquitted Evans of the events occurring on this date, we do not detail the underlying facts.

4

that stand." He reprimanded her for opening the door to be served the subpoena. He also said to testify she made "up shit" and had not told the truth.

*Charged Crimes and Jury Verdict*

On counts 1 and 2, the amended information alleged that on January 1, 2013 Evans "willfully and unlawfully inflict[ed] a corporal injury resulting in a traumatic condition upon . . . Zendejas," in violation of section 273.5, subdivision (a). Count 1 alleged "Injury to victim's leg," and count 2 alleged "Injury to victim's face, neck and chest." The jury found Evans guilty of both of these section 273.5 counts.

On counts 6 and 7, the amended information alleged Evans "attempt[ed] to prevent and dissuade a witness and victim from attending and giving testimony," in violation of section 136.1, subdivision (a)(2). Count 6 alleged the crime occurred on February 1, 2013, and count 7 alleged the crime occurred on February 5, 2013. The jury found Evans guilty of both of these section 136.1 counts.

The jury also found Evans guilty of a vandalism charge (count 3) regarding his breaking the door to Zendejas's home on January 1, 2013.

*Sentencing*

At the sentencing hearing, the court imposed a sentence of seven years four months.[3] But the court suspended execution of the sentence and granted probation, conditioned on Evans complying with specified probation conditions and successfully

---

[3]     The sentence consisted of:  a three-year midterm on count 1; a consecutive one year on count 2; a consecutive eight months on count 6; a consecutive eight months on count 7; a consecutive one year each for two prison priors (and striking the remaining five prison priors).  The court sentenced Evans to time served on the vandalism count.

completing the two-year Delancey Street residential program. The court admonished Evans there would be no second chances and if he were to fail to complete the Delancey Street program or violate a probation condition, the seven-years-four-months sentence would be imposed without qualification or modification.

DISCUSSION

I. <em>Multiple Convictions Under Spousal Abuse Statute</em>

Evans contends his two section 273.5 spousal abuse convictions must be consolidated because the multiple convictions violate section 954. Specifically, Evans contends the two convictions should have been a single conviction because they were based on actions that occurred during the same "course of conduct." The argument is without merit.

A. <em>Legal Principles</em>

Generally, under section 954 a defendant may suffer multiple convictions arising from the *same* act or course of conduct. (*People v. Correa* (2012) 54 Cal.4th 331, 336-337 (*Correa*); *People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227; *People v. Thurman* (2007) 157 Cal.App.4th 36, 43.) "Unless one offense is necessarily included in the other . . . , multiple convictions can be based upon a single criminal act or an indivisible course of criminal conduct . . . ." (*People v. Benavides* (2005) 35 Cal.4th 69, 97.) "The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict . . . ." (§ 954.)

6

Under section 954, a separate conviction is permissible for each *completed* crime (as determined by the statutory elements of the crime), even if the defendant had the same intent and objective in committing the multiple crimes and even if the defendant committed the crimes at or near the same time. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474-1477 (*Johnson*).) Applying this principle in factual circumstances similar to here, the *Johnson* court held a defendant may be properly charged and convicted of multiple counts of spousal abuse under section 273.5 based on acts occurring during a single event if the victim suffered multiple injuries caused by distinct applications of force. Interpreting the statute, the court reasoned the "crime described by section 273.5 is complete upon the willful and direct application of physical force upon the victim, resulting in a wound or injury. It follows that where multiple applications of physical force result in separate injuries, the perpetrator has completed multiple violations of section 273.5." (*Id.* at p. 1477.)

Based on this analysis, the *Johnson* court upheld three separate convictions of section 273.5, each of which concerned separate injuries sustained during the same beating. (*Johnson, supra*, 150 Cal.App.4th at p. 1477.) The court explained: "Defendant indisputably committed successive acts of violence against Doe [during the same beating incident]. Although Doe's testimony does not precisely describe the sequence of the beating, we do know that defendant beat her about the face and head; held her by her throat up against the wall; beat her on her back, hips, and legs; and stabbed her in the upper arm. Doe suffered two black eyes, a split lip, bruises to her neck, back, and hips and a puncture wound to her upper arm. From this evidence the jury could have

7

concluded that defendant completed one violation of section 273.5 when he beat Doe about the head and face, blackening her eyes and splitting her lip; another when he held her by the throat and continued to strike her and restrain her such that she suffered bruises about her back and neck; and another when he injured her upper arm, drawing blood and leaving a visible scar. Accordingly, the evidence is sufficient to support the three convictions of section 273.5." (*Ibid*.)

### B. *Analysis*

Under section 954, Evans was properly convicted of two separate crimes relating to his beating his wife on January 1, 2013. In count 1, the jury found the prosecution proved Evans willfully and unlawfully inflicted a corporal injury resulting in *injury to Zendejas's* *leg*. In count 2, the jury found the prosecution proved Evans willfully and unlawfully inflicted a corporal injury resulting in injuries to Zendejas's *face, neck, and chest*. Evans's action in causing injury to Zendejas's leg (throwing the bottle) was distinct from his actions causing injuries to the rest of Zendejas's body (slapping, grabbing, hitting). Evans does not challenge the sufficiency of the evidence to support that Zendejas did suffer these specific injuries based on Evans's engaging in multiple acts of violence against her. Because each count alleged a different completed injury or injuries to Zendejas, Evans could be properly convicted of these multiple acts in separate counts. (See *Johnson, supra*, 150 Cal.App.4th at pp. 1473-1477.) The fact that these injuries were sustained during a single continuous beating or that Evans may have held the same intent and objective in inflicting these injuries does not bar the multiple convictions. (*Id.* at p. 1474.)

8

We reject Evans's argument that the multiple convictions were improper because the prosecutor charged count 2 as including several injuries inflicted at different times, and thus a course of conduct, and alleged count 1 as a single act. Section 954 permits the prosecutor to elect whether to charge multiple crimes based on multiple completed acts or to allege a single completed act as a single crime. The fact that count 2 charged multiple completed acts and count 1 charged a single act was within the prosecutor's charging discretion and did not constitute a violation of section 954.

As his primary challenge to his multiple section 273.5 convictions, Evans argues that *Johnson* was wrongly decided. In support, he relies on a case decided before *Johnson*, *People v. Thompson* (1984) 160 Cal.App.3d 220 (*Thompson*). This reliance is misplaced. *Thompson* concerned a different issue involving the defendant's right to be informed of the particular act he was accused of committing and his right to a jury unanimity instruction. (*Thompson, supra*, 160 Cal.App.3d at p. 223.) In *Thompson,* the prosecutor charged only one count of section 273.5, but the victim testified to multiple acts of abuse. (*Id.* at pp. 222-223.) *Thompson* ruled that section 273.5 contemplated a continuous course of conduct over time even if "each individual act *may* not amount to a crime." (*Id.* at p. 225, italics added.) *Thompson* thus held that because the continuous course of conduct is a single crime, no unanimity instruction was required. (*Id.* at pp. 224-226.)

*Thompson* is inapplicable here because the *Thompson* court did not consider the issue regarding the prosecution's power to charge multiple acts of abuse where, as here, each battery satisfied the elements of section 273.5, subdivision (a) and constituted a

9

crime.  Unlike the defendant in *Thompson,* Evans does not claim he was unaware of the specific act underlying the charges or raise a unanimity issue.  Moreover, to the extent that *Thompson* suggested a section 273.5 crime is not completed upon the infliction of a discrete injury by a distinct act, we reject this interpretation of the statute.  (See *Johnson, supra*, 150 Cal.App.4th at pp. 1473-1477; see also *People v. Healy* (1993) 14 Cal.App.4th 1137, 1139-1140 ["*Thompson* . . . did not directly concern a limitation upon the number of convictions a defendant could suffer."]; *People v. Lofink* (1988) 206 Cal.App.3d 161, 165 [upholding multiple charges for child abuse based on acts occurring during same course of conduct resulting in separate identified injuries].)

We have reviewed each of Evans's additional cited authorities, and find them inapplicable or unpersuasive.  For example, Evans cites *People v. Oppenheimer* (1909) 156 Cal. 733 for the proposition that multiple batteries occurring during a single assaultive episode can result only in a single conviction.  However, *Oppenheimer* did not address the issue whether multiple acts of violence can support multiple assault convictions.  There, the defendant was charged with and convicted of a *single* count of assault (with two weapons), and the issue on appeal was whether the evidence supported the crime as charged and proved.  (*Id.* at pp. 739-740.) The Supreme Court answered that question affirmatively.  (*Id.* at pp. 740-741.)  Here, Evans was charged with and convicted of at least two discrete physical assaults, and substantial evidence supports both convictions.  The fact that two closely related attacks *can* be characterized as a single assault does not support the conclusion that two more separate and distinct attacks *must* be characterized as a single assault.

10

Similarly, in *People v. Djekich* (1991) 229 Cal.App.3d 1213, this court addressed a different issue than the one before us, concerning the question whether a zoning ordinance specifically authorized a separate conviction for each violation. (*Id.* at pp. 1221-1224.) Although we broadly stated in dicta that a defendant can be convicted of "only a single offense" if "the commission of a crime involves continuous conduct" and was committed with a "single intent and objective," we did not consider the issue whether section 954 *bars* multiple convictions for separate completed acts under the specific statutory provision. (*Id.* at p. 1221.) Cases are not authority for propositions not considered. (*People v. Jennings* (2010) 50 Cal.4th 616, 684.)

II. *Multiple Convictions for Attempting To Dissuade Victim/Witness*

Evans also contends his two separate convictions for attempting to dissuade a victim or witness violated section 954. He argues that his two separate telephone calls to Zendejas, four days apart, was one continuous course of conduct to achieve a single goal and therefore can support only one conviction under section 136.1.

Section 136.1, subdivision (a)(2) prohibits "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." Count 6 alleged a violation of section 136.1 based on a February 1, 2013 telephone call, and count 7 alleged a violation of section 136.1 based on a February 5, 2013 telephone call.

At trial, the prosecution presented evidence that on February 1, 2013, Evans called Zendejas from jail and repeatedly told her she should not show up for court. Four days later, Evans again called Zendejas, and during that conversation, Zendejas said she had

11

been served with a subpoena.  Evans responded by repeatedly telling her not to attend the hearing, threatening to end their marriage, telling her what to testify to if she did go to the hearing, and reprimanding her for being served with a subpoena.  The jury found Evans guilty of the section 136.1 offenses alleged in count 6 and count 7.

Evans does not challenge that substantial evidence supported that he violated section 136.1 with respect to each telephone call.  However, similar to his challenge to his spousal abuse convictions, Evans contends he could be convicted of only one count of violating section 136.1 because he had the same intent and objective in both calls—to dissuade Zendejas from testifying.  The argument is without merit.

First, there was substantial evidence to show that Evans had a separate intent and objective with respect to both phone calls because the circumstances were different—a subpoena had been served between the two calls and Evans had a different motivation in making each call.  Moreover, even assuming the same intent, as explained above the "same intent and objective" test is not necessarily the proper standard for analyzing claims under section 954.  (See *Johnson, supra*, 150 Cal.App.4th at p. 1474.)  The proper analysis is whether the defendant engaged in a completed crime as determined by the statutory elements of the charged offense.  (*Id.* at pp. 1473-1477.)  If the defendant did commit multiple completed crimes, multiple convictions are proper.  (*Ibid*., see *Correa, supra*, 54 Cal.4th at pp. 336-337.)  In this case, Evans violated section 136.1 each time he called his wife to dissuade her from coming to court; these telephone calls were made four days apart.  Thus, Evans could be charged and convicted for each telephone call.

12

As in his prior argument, Evans relies on case law regarding whether the charged offense may be considered a continuing course-of-conduct crime in other contexts. The logic of those decisions do not apply here. For example, in *People v. Salvato* (1991) 234 Cal.App.3d 872 (*Salvato*), the defendant made a series of threats to kill his wife if she did not agree to a favorable property settlement in their divorce. (*Id.* at p. 876.) He was charged with numerous crimes, including two counts of section 136.1, one occurring during a specified period in early 1988, and the other occurring during a specified period in 1989. (*Id.* at p. 878.) The jury was given a unanimity instruction, and the defendant was convicted of both counts. (*Ibid*.) On appeal the defendant argued that despite the unanimity instruction, the prosecutor was required to elect the acts upon which it relied for each of the two section 136.1 counts. (*Ibid*.) The court rejected this argument, explaining that an election was not required when the crime fell within the " 'continuous conduct' " exception. (*Id.* at p. 882.) Relying on *Thompson's* analysis of section 273.5, the *Salvato* court explained that a "continuous conduct crime" is one where "the gravamen of the offense lay in the *cumulative result* of the acts, each of which alone *might* not be criminal." (*Salvato, supra*, 234 Cal.App.3d at p. 882, second italics added; see *Thompson, supra*, 160 Cal.App.3d at p. 225.) The court concluded that section 136.1 fell into the "continuous conduct" exception because "the language of section 136.1 focuses on an unlawful goal or effect, the prevention of testimony, rather than on any particular action taken to produce that end," and noted that the terms " 'Prevent' and 'dissuade' denote conduct which can occur over a period of time *as well as instantaneously*." (*Salvato, supra*, at p. 883, italics added.)

13

*Salvato* does not support Evans's contention that multiple convictions were improper here. The *Salvato* court recognized that section 136.1 *could* be violated by a single act, and did not hold or suggest that section 954 barred multiple convictions for two completed acts of dissuading a witness. In fact, in *Salvato*, the defendant *was* convicted of multiple convictions of section 136.1 despite that the defendant's goal was the same in all instances—to effectuate a favorable property settlement. (*Salvato, supra*, 234 Cal.App.3d at pp. 876-878.)

### III. *Section 654*

Evans alternatively contends the court erred in imposing multiple *punishments* for counts 1 and 2 and for counts 6 and 7.

Under section 654, "An act or omission that is punishable in different ways *by different provisions of law* shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a), italics added.) The statute is "intended to ensure that defendant is punished 'commensurate with his culpability.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Two years ago, the California Supreme Court held that "section 654 does not bar multiple punishment for multiple violations of the *same criminal statute*." (*Correa, supra*, 54 Cal.4th at p. 334, italics added.) In so holding, the court overruled prior case law applying section 654 to bar punishment on the same criminal offenses, and held that this new statutory interpretation had prospective application only. (*Correa, supra*, at pp. 334, 340-344.)

14

Under *Correa*, section 654 does not bar the imposition of separate punishment for Evans's two section 273.5 convictions based on counts 1 and 2, and for the two section 136.1 convictions based on counts 6 and 7. Each of these pairs of multiple convictions was based on the same statute, and thus section 654 is inapplicable.[4] (See *Correa, supra*, 54 Cal.4th at pp. 334, 340-344.)

Additionally, we reject Evans's argument that the court erred in failing to stay the sentence on Count 3 under section 654. Count 3 involved a vandalism conviction relating to Evans's breaking down the door when he returned to Zendejas's apartment after dropping off Zendejas's children at her sister's house. (§ 594, subd. (a).) Evans argues the punishment on the vandalism count was improper because he had the same intent and objective as when he committed the crimes in counts 1 and 2 (to assault his wife).

When applicable, section 654 bars double punishment for multiple offenses that constitute one indivisible transaction. (*People v. Hicks* (1993) 6 Cal.4th 784, 788-789.) However, a defendant may be separately punished for offenses that share common acts and are part of an indivisible course of conduct if the defendant entertained multiple criminal objectives. (*People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.) Whether a course of conduct is indivisible depends on the defendant's intent and objective rather than the temporal proximity of the offenses. (*Hicks*, at p. 789.) One

---

[4] On this section 654 issue, defendant's reliance on *Johnson, supra*, 150 Cal.App.4th 1467 is misplaced. *Johnson* was decided before *Correa* and therefore applied the prior section 654 law that has now been overruled.

relevant factor is whether there was an opportunity for the defendant to reflect between the criminal acts. (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368.)

In a section 654 analysis, the defendant's intent and objective are factual questions to be determined by the trial court. (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.) We affirm the court's findings if there is substantial evidence to support them. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.)

In this case, the evidence supports that Evans had the opportunity to reflect between breaking down the door and inflicting the final injuries on his wife. Moreover, there was substantial evidence to support a finding that Evans's purpose in breaking down the door was different from his intent in assaulting his wife. A reasonable factfinder could find that Evans broke the door because he wanted to get back inside the residence where he lived with his wife. Once inside, the couple continued their argument and then Evans slapped or hit Zendejas. Under these facts, these crimes were not indivisible for purposes of section 654 analysis.

Based on the determination that section 654 does not bar the separate sentences here, we need not reach the Attorney General's contention that the issue is not ripe because the court suspended execution of the sentence.

DISPOSITION

Judgment affirmed.

HALLER, Acting P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.

17