[No. A018076. First Dist., Div. Three. Sept. 21, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH THOMPSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Certified for publication except as to parts II, III, IV, V, and VI. (Cal. Rules of Court, rules 976(b) and 976.1.)

## COUNSEL

Frank O. Bell, Jr., and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Neil Rosenbaum and David R. Feld, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene Kaster and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, J.**—This is an appeal from a judgment rendered after a jury trial at which defendant was found guilty of violation of Penal Code[1] section 273.5, (corporal injury to spouse resulting in a traumatic condition).

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

Appellant, Kenneth Thompson, was charged in a four-count information with forcible sodomy (§ 286, subd. (c)), forcible oral copulation (§ 288a, subd. (c)), spousal rape (§ 262, subd. (a)), and infliction of corporal injury on spouse (§ 273.5) during the period January 1, 1981 to January 21, 1981.

During trial the court granted the prosecution's motions to dismiss the charges of forcible sodomy, oral copulation and spousal rape.

Criminal proceedings were suspended when appellant was found incompetent pursuant to section 1368; when he was returned to court as competent the court suspended imposition of sentence and placed him on probation for three years, one condition being that he live in a board and care facility and obey the rules of the house. He appeals that judgment and for the reasons which follow, we affirm.

In the fall of 1980 the Thompsons were married.

On December 31 of that year, appellant arranged for his wife, Evelyn, to undergo a sexual assault examination at Community Hospital, claiming she had been raped a few days earlier. The nurse practitioner, Rita Utterbeck, conducted a full examination of Evelyn and observed a number of bruises on her body, but was unable to confirm the "rape."

During the first week of January, Detective Knobelauch was called to Community Hospital to investigate a rape reported again by Evelyn and appellant. Evelyn's description of her assailant matched appellant's appearance on that day. She said she had been raped, sodomized, and forced to orally copulate her attacker. Evelyn indicated that she had been raped by the same man one to two weeks previously. Throughout the interview appellant interrupted frequently, prompted his wife's answers and refused to leave the room when asked to. Nurse Practitioner Rachel Hardester attempted to perform a complete sexual assault examination of Evelyn; she observed numerous bruises on Evelyn's body. But appellant refused to allow her to conduct a pelvic examination and he and his wife left.

The Thompsons went to Community Hospital again two days later. An employee saw appellant slap Evelyn when she didn't want to sign a record release form.

Subsequently, the Thompsons moved to Forrestville. Evelyn testified that while living there appellant frequently beat her, tied her feet together at night to prevent her from leaving, choked her and hit her with a breadboard.

Later in January three detectives, including Detective Knobelauch, went to the Thompson home to obtain a full statement from Evelyn concerning

the reported rape. She was not in the same condition that she had been at the beginning of the month; she now had two black eyes. Evelyn asked to go with the police because she feared appellant would kill her.

The police took her to the sheriff's department, where photographs were taken of her physical condition.

Evelyn was then taken to Community Hospital where she was examined by Nurse Practitioner Fred Kontreras. She told him that appellant had been beating and sodomizing her. He observed extensive bruising with some of the bruises being old, others new. He opined that her injuries were consistent with battered wife syndrome.

Evelyn testified that her husband was the man who had raped her.

## I

During the course of trial the jury heard evidence of numerous sexual and physical assaults suffered by Evelyn. Appellant claims that since the prosecutor was not required to elect which act he was relying on to prove the crime charged, appellant was denied his right to be informed of the particular act he was accused of committing. Further, he contends that the trial court erred in failing to give CALJIC No. 17.01[2] which informs the jury that they must agree unanimously on which act they based their guilty verdict.[3] He claims this denied him a unanimous jury verdict.

The problems complained of by appellant arise in cases where violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged. Our Supreme Court stated the rule of these cases in the recent case of *People* v. *Diedrich* (1982) 31 Cal.3d 263 [182 Cal.Rptr. 354, 643 P.2d 971]: "As we said in the seminal case of *People* v. *Castro, supra,* 133 Cal. [11] at page 13 [65 P. 13]: 'The state, at the commencement of the trial, should have been required to select the particular act upon which it relied to make good the allegation of the information. This was not done; and even conceding that the failure to make such election at that time did not constitute error because of the

---

[2]CALJIC 17.01 reads as follows: "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[3]All CALJIC instructions referred to are from the fourth edition (1979).

want of demand upon the part of the defendant to make the election, still, when the case went to the jury, the court . . . should have directed their minds to the particular act of intercourse which it was incumbent upon the state to establish by the evidence, before a verdict of guilty could be returned against the defendant. This was not done.' (See also, *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323].) The reasons for requiring jury unanimity on at least one particular crime shown by the evidence are too obvious to require another restatement." (*Id.*, at p. 281.)

The doctrine of "election" and the requirement of an instruction on jury unanimity are based on the same long line of cases, beginning with *Castro*. Some of these cases have focused on the election aspect, finding error when the prosecutor fails to make an election. (See *People* v. *Yarber* (1979) 90 Cal.App.3d 895, 910 [153 Cal.Rptr. 875].) Others concentrate on the lack of proper instruction as providing the source of the error. (*People* v. *Goldstein* (1982) 130 Cal.App.3d 1024, 1040 [182 Cal.Rptr. 207]; *People* v. *Hefner* (1981) 127 Cal.App.3d 88, 96-97 [179 Cal.Rptr. 336].) Still others indicate that either election or an instruction is necessary to prevent error. (See *People* v. *Diedrich, supra,* 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971]; *People* v. *Metheney* (1984) 154 Cal.App.3d 555, 563 [201 Cal.Rptr. 281]; see generally, *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561 [199 Cal.Rptr. 756].)

Neither instruction nor election are required, however, if the case falls within the continuous course of conduct exception. This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. (E.g., *People* v. *Mota* (1981) 115 Cal.App.3d 227, 231-234 [171 Cal.Rptr. 212] [repeated acts of rape during one hour].) The second is when, as here, the statute contemplates a continuous course of conduct of a series of acts over a period of time. (*People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299] [child abuse].)

This second category of the continuous course of conduct exception has been applied to a limited number of varying crimes, including pimping (*People* v. *Lewis* (1978) 77 Cal.App.3d 455, 461 [143 Cal.Rptr. 587, 3 A.L.R.4th 1185]), pandering (*People* v. *White* (1979) 89 Cal.App.3d 143, 151 [152 Cal.Rptr. 312]), failure to provide for a minor child (*People* v. *Morrison* (1921) 54 Cal.App. 469, 471 [202 P. 348]), contributing to the delinquency of a minor (*People* v. *Lowell* (1946) 77 Cal.App.2d 341, 345-347 [175 P.2d 846]) and child abuse (*People* v. *Ewing, supra,* 72 Cal.App.3d at p. 717). While we are aware of no case which has applied

this exception specifically to spousal battering, we believe the underlying rationale for this exception supports its application to this crime.

The instant case is closely analogous to child abuse. In extending the exception to child abuse, the court in *People* v. *Ewing* stated that "[a]lthough the child abuse statute may be violated by a single act [citation], more commonly it covers repetitive or continuous conduct. [Citation.] Here, the information alleged a course of conduct in statutory terms which had occurred between two designated dates. The issue before the jury was whether the accused was guilty of the course of conduct, not whether he had committed a particular act on a particular day." (*People* v. *Ewing, supra,* 72 Cal.App.3d at p. 717.)

Like child abuse, this is a case where each individual act may not amount to a crime, but the cumulative outcome is criminal. "It is the continuing course of abuse which leads to prosecution and conviction." (*People* v. *Epps* (1981) 122 Cal.App.3d 691, 702 [176 Cal.Rptr. 332].)

Cases applying the continuous conduct exception have generally relied on statutory interpretation to justify a conclusion that the nature of the crime is ongoing. (See *People* v. *Lewis, supra,* 77 Cal.App.3d at pp. 460-461; *People* v. *White, supra,* 89 Cal.App.3d at p. 151.) A comparison of the legislative history of the relevant child abuse (§ 273d) and spousal battering (§ 273.5) statutes demonstrates their similarity, and supports a conclusion that both are aimed at repetitious activity which culminates in prohibited conduct.

Originally, both crimes were included in the same statute, namely, section 273d.[4] In 1977 the Legislature amended section 273d, and added section 273.5 to separate the provisions relating to child abuse from those relating to wife abuse. However, the operative language in these statutes remained the same.[5] No inference can be drawn from such amendment that the Leg-

---

[4]Section 273d previously read as follows: "Any husband who willfully inflicts upon his wife corporal injury resulting in a traumatic condition, and any person who willfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for not more than 10 years or in the county jail for not more than one year." (Added by Stats. 1945, ch. 1312, § 1, at p. 2462. Amended by Stats. 1957, ch. 1342, § 1, at p. 2673. Amended by Stats. 1965, ch. 1271, § 4, at p. 3146.)

[5]Section 273d currently provides: "Any person who willfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition is guilty of a felony . . . ."

Corresponding language is found in section 273.5: "Any person who willfully inflicts upon his or her spouse, or any person who willfully inflicts upon any person of the opposite sex with whom he or she is cohabiting, corporal injury resulting in a traumatic condition, is guilty of a felony . . . ."

islature intended to change the nature of the crimes. Retention of the nearly identical language for each crime negates such interpretation.

Appellant maintains that this exception should not apply to spousal battering because section 273.5 defines a form of battery that is "conceptually different" from child abuse. We disagree. Both the victim of spousal and of child abuse are likely to be unwilling to report their abuse to the authorities due to fear of physical and/or emotional retaliation on the part of the attackers. Both patterns of behavior are based on controlling another individual through violence. We see no "conceptual difference" between the two crimes.

Furthermore, there are sound policy reasons supporting this interpretation. If this exception did not apply the prosecutor, not knowing which act would convince the jury of guilt, would separately charge each act of violence. Assuming the jury believed that a majority or all of the acts took place, a defendant would then be subject to a much longer sentence.

■ Due process requires only that defendants be given adequate notice of the charges against them so that they may have a reasonable opportunity to prepare their defense and not be taken by surprise at trial. (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].) "Following an indictment or information, a preliminary hearing, and criminal discovery, a defendant should be sufficiently advised of the charge or charges to be able to plan a defense." (*People* v. *Dunnahoo, supra,* 152 Cal.App.3d at p. 571 [199 Cal.Rptr. 796].) Furthermore, language from the analogous child abuse statute (§ 273d) prohibiting the infliction of cruel or inhuman "corporal punishment or injury resulting in a traumatic condition" has been found to provide adequate notice to those whose conduct is proscribed. (See *People* v. *Smith* (1984) 35 Cal.3d 798, 810 [201 Cal.Rptr. 311, 678 P.2d 886].) ■ Thus appellant should have been able to reasonably understand the nature of the charge against him based on the information alone.

Lastly, many of the cases requiring either election or a unanimity instruction involved multiple defense theories. In concluding that the failure to give CALJIC No. 17.01 was prejudicial, the court in *People* v. *Diedrich* stated that "[t]his is not a case where the jury's verdict implies that it did not believe the only defense offered." (*People* v. *Diedrich, supra,* 31 Cal.3d at p. 283.) Unlike *Diedrich,* the defendant here offered only one defense: that he did not hit Evelyn. The essence of the jury's task was to decide who was telling the truth, the appellant or his wife. There was no possibility of some jurors believing one defense, and some another.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

---

*Part II of this opinion is not certified for publication. (See fn., *ante*, p. 220.)