Filed 7/28/15  P. v. Pearsall CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS ALLEN PEARSALL,<br><br>Defendant and Appellant. | C076987<br><br>(Super. Ct. No. CR031431) |

A jury convicted defendant Douglas Allen Pearsall of felony infliction of a corporal injury resulting in a traumatic condition on a person with whom defendant previously had a dating relationship.  The jury also convicted defendant of misdemeanor assault.  The trial court sentenced defendant to four years in prison for the corporal injury conviction, and to a concurrent six months in jail for the assault conviction.

1

Defendant now contends (1) the trial court failed in its sua sponte duty to provide a unanimity instruction on the corporal injury count, and (2) the trial court should have stayed the punishment for the misdemeanor conviction pursuant to Penal Code section 654.[1]

We conclude the trial court did not have a sua sponte duty to provide a unanimity instruction. However, punishment for the misdemeanor assault should have been stayed.

We will modify the judgment accordingly and affirm the judgment as modified.

BACKGROUND

Defendant was charged with willfully and unlawfully inflicting corporal injury resulting in a traumatic condition upon a person in a former dating relationship (§ 273.5, subd. (a) -- count one); assault with a deadly weapon, a metal pipe (§ 245, subd. (a)(1) -- count two); and false imprisonment (§ 236 -- count three). As to the corporal injury count, it was alleged defendant had a prior conviction for battery on a spouse or cohabitant (§ 243, subd. (e)) within seven years of the currently charged acts, rendering him subject to a specific sentencing structure (§ 273.5, subd. (f)(2)). As to the corporal injury and assault counts, it was further alleged that defendant personally inflicted great bodily injury on the victim. (§ 12022.7, subd. (e).)

The evidence adduced at trial established that years earlier, defendant and the victim lived together and were involved in a sexual relationship, and at the time of the charged crimes they were friends. On January 25, 2014, defendant called the victim and invited her for dinner. Later that day, defendant drove to the victim's house, saw her on her patio with a male friend, and backed out of the driveway. Defendant sent the victim a text message asking whether she was still going to join him for dinner. When her friend left, the victim responded to defendant's text message and confirmed she planned to join

_____

[1] Undesignated statutory references are to the Penal Code.

2

him for dinner.  Defendant asked the victim, who was an alcoholic, to stop at the store to buy him beer and cigarettes.  She stopped at the store on her way to defendant's house, and in addition to the beer and cigarettes, purchased several shots of vodka for herself.

When the victim arrived at defendant's home, they ate and talked and began to drink alcohol.  While they were eating, the victim received a text message from the male friend defendant had seen her with earlier.  She looked at her phone and placed it on the coffee table.  Defendant grabbed the phone and began looking through it.

The victim attempted to retrieve the phone from defendant, but he threw her to the ground by the neck, kneeled on her chest and began intermittently choking her and holding down her arms and legs.  Defendant then released the victim and she ran to her car.  The victim tried to call 911 using her phone, but defendant took the phone from her and removed the battery.  Before she could shut the door to her car and escape, defendant pulled her out by her hair and by her hooded sweatshirt.  She landed on the ground and defendant knelt on top of her and began choking her again.  The victim tried to push him off and roll away, but could not.  Defendant kicked her once and twice hit her in the temple with a metal pipe.  Defendant also squeezed her face with his fingers, told her he was going to kill her, and dragged her by the hair back into the house.

Once inside, defendant placed the victim on the ground, knelt on top of her, and wiped the blood from her face with a towel.  He took her shoes off, dumped the contents of her purse out onto his bed, and let her go.  She grabbed one boot and a few of her things and ran to her car with defendant chasing her.

The victim drove to her neighbor's house but he did not answer the door.  She then drove to her house and tried to find her other phone to call 911.  While she was doing that, defendant drove up to her house.  He kicked in her door, lunged at her, threw her down on the couch and began choking and kicking her.  When she slid to the floor, he got on top of her and continued choking her until she called her daughter's name.  Defendant

3

got up and left. The victim found her phone, called 911 and also called her male friend, and then drank the rest of her alcohol.

A few days later, the victim sought medical treatment. She had the remnant of a black eye received from her daughter a month or two earlier, but she also had a welt on her forehead, a bloodied nose, cuts and bruises on her face, bruises on her hip, arm, shoulder and chest, hand marks on her neck, and a swollen eye.

A couple of days after the incident, when asked what had happened between defendant and the victim, defendant told a friend he had "F'd up."

In 2012, defendant had thrown the victim to the ground by the neck, knelt on top of her, choked her, threatened to kill her and his ex-wife, and held a butcher's knife to her neck.

The jury found defendant guilty of willfully and unlawfully inflicting corporal injury resulting in a traumatic condition upon a person in a former dating relationship. The jury found defendant not guilty of assault with a deadly weapon, but found him guilty of the lesser offense of assault. (§ 240) The jury found defendant not guilty of false imprisonment and also found that defendant did not personally inflict great bodily injury on the victim. Defendant admitted a prior conviction for spousal battery. (§§ 243, subd. (e)(1), 273.5, subd. (f)(2).)

The trial court sentenced defendant to the upper term of four years in state prison for the corporal injury conviction, and to a concurrent term of six months in county jail for the assault conviction.

DISCUSSION

I

Defendant contends that because multiple incidents could have been the basis for the jury's finding that defendant had inflicted corporal injury on a former dating partner in violation of section 273.5, the trial court's failure to instruct the jury sua sponte regarding the unanimity requirement is prejudicial error mandating reversal on that count.

4

The People argue no unanimity instruction was required because the evidence showed a continuous course of criminal conduct, and even if the instruction was required, the failure to provide it was harmless.

No specific injury was alleged as the basis of this crime, and in closing arguments, the People argued that defendant first grabbed the victim by the neck, threw her on the ground, knelt on top of her, and choked her; then, he pulled her out of her car, threw her to the ground, choked her again, hit her, knelt on her chest, and hit her head with a metal pipe; then, dragged her into the house, pinned her on the ground; then, he followed her to her house, where he grabbed her by the throat, threw her down, and pinned her again. The People argued defendant had willfully inflicted corporal injury on the victim by "choking her, hitting her, [and] bruising [her] all over." Defendant argued the victim's version of events was not plausible, and that it was more likely that she had gotten drunk, blacked out, and been injured over a period of days, possibly by her daughter or daughters.

A criminal defendant has a constitutional right to a unanimous jury verdict, meaning "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Thus, "if one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' [Citation.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114.) Thus, where no election has been made by the prosecution, the trial court possesses a sua sponte duty to provide a unanimity instruction. (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 274-275.)

A unanimity instruction is not required, however, if the case falls within the continuous course of conduct exception. (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224 (*Thompson*).) This exception arises in two contexts. First, a unanimity

5

instruction is not required when the criminal acts are so closely connected they form part of the same transaction, and thus one offense. The second context occurs when the statute defines the offense to comprise a continuous course of conduct over a period of time. (*Ibid*.) "Cases applying the continuous conduct exception have generally relied on statutory interpretation to justify a conclusion that the nature of the crime is ongoing." (*Id*. at p. 225.)

The court in *Thompson, supra,* 160 Cal.App.3d 220, concluded that spousal battery falls within the continuous course of conduct exception based on the language of section 273.5. (*Thompson, supra,* 160 Cal.App.3d at pp. 224-225.) *Thompson* reasoned that "[a] comparison of the legislative history of the relevant child abuse (§ 273d) and spousal battering (§ 273.5) statutes demonstrates their similarity, and supports a conclusion that both are aimed at repetitive activity which culminates in prohibited conduct. [¶] Originally, both crimes were included in the same statute, namely section 273d. In 1977 the Legislature amended section 273d, and added section 273.5 to separate the provisions relating to child abuse from those relating to wife abuse. However, the operative language in these statutes remained the same. No inference can be drawn from such amendment that the Legislature intended to change the nature of the crimes. Retention of the nearly identical language for each crime negates such interpretation." (*Thompson*, at pp. 225-226, fns. omitted.) Both statutes, as pointed out in *Thompson*, make criminal the willful infliction of a "corporal injury resulting in a traumatic condition." (*Id.* at p. 226, fn. 5.) The rationale of *Thompson* has been subsequently distilled as resting on the principle that a "continuous conduct crime" is one where "the gravamen of the offense lay in the cumulative result of the acts, each of which alone might not be criminal." (*People v. Salvato* (1991) 234 Cal.App.3d 872, 882, italics omitted.) Thus, the harm addressed by section 273.5 -- namely, a traumatic condition -- is one that may be the cumulative result of a defendant's criminal course

of conduct. Accordingly, the continuous course of conduct exception applies where the charged crime is a violation of section 273.5.

Defendant relies on *People v. Johnson* (2007) 150 Cal.App.4th 1467 (*Johnson*) and *People v. Lueth* (2012) 206 Cal.App.4th 189 (*Lueth*), but those cases do not hold otherwise. In *Johnson*, the defendant was charged with and convicted of three separate counts of corporal injury upon a cohabitant in violation of section 273.5. (*Johnson,* at p. 1473.) On appeal, Johnson argued he could only be convicted of a single count because the incident involved a single continuous assault. (*Id.* at p. 1474.) That presented a different question than whether the court must provide a unanimity instruction when the incident, though involving multiple blows, is charged not as multiple counts but as a single continuous course of conduct. Therefore, the holding in *Johnson* -- that the defendant could be convicted on multiple counts for violating section 273.5 where he inflicted multiple injuries on the victim -- is inapposite. (*Johnson*, at p. 1477.)

And in *Lueth*, where there was evidence the victim sustained a bump on her forehead in one beating and other bumps and bruises in another beating, the court held that those beatings, which occurred in rapid succession, constituted only a single statutory violation. (*Lueth, supra,* 206 Cal.App.4th at p. 198.) The *Lueth* court went on to hold that even if it was error to fail to provide the unanimity instruction, the error was harmless under *Johnson*, but that does not render meaningless its other holding, i.e., that the unanimity instruction was not required. Under *Thompson*, a violation of section 273.5 " 'contemplates a continuous course of conduct of a series of acts over a period of time.' " (*Lueth,* at p. 198.)

We agree with *Thompson* that section 273.5 "contemplates a continuous course of conduct of a series of acts over a period of time." (*Thompson, supra,* 160 Cal.App.3d at p. 224.) Because the successive beatings of the victim in this case were charged as a single continuous course of conduct, no unanimity instruction was required, and the trial court did not violate a sua sponte duty.

7

## II

Defendant contends that because the same conduct was the basis for both the corporal injury conviction and the assault conviction, the sentence for the assault conviction should have been stayed pursuant to section 654. The People agree, and so do we.

"Section 654 precludes multiple punishment where an act or course of conduct violates more than one criminal statute but a defendant has *only* a single intent and objective." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.) If the statute applies, the trial court must impose sentence but stay execution on all convictions arising out of that course of conduct except the one carrying the longest sentence. (*Ibid.*) We review explicit or implicit factual resolutions of the trial court for substantial evidence in the trial record, which the court may base on any facts in the record without regard to the verdicts unless the verdicts foreclose the consideration of them in some fashion. (*Id.* at pp. 1338, 1340.)

Here, the charged crime of assault with a deadly weapon was premised on defendant's use of the pipe to strike the victim in the head. The jury found him not guilty on that charged count, but guilty of the lesser offense of misdemeanor assault. The assault charged in count two was described to the jury as part of the continuous course of conduct that was the basis for the corporal injury charged in count one. And, the record demonstrates no separate intent and objective behind that particular assault as compared to any of the others that were the basis for the conviction in count one. Because the assault that was the basis for defendant's conviction in count two is part of an indivisible course of conduct with the acts that were the basis for defendant's conviction in count one, the punishment on count two must be stayed.

## DISPOSITION

The judgment is modified to stay the punishment on count two, misdemeanor assault in violation of section 240. The judgment is affirmed as modified. The trial court

8

is directed to prepare an amended abstract of judgment reflecting the judgment as modified and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


                                                   _____MAURO_____, J.


We concur:


_____BLEASE_____, Acting P. J.


_____RENNER_____, J.

9