Filed 11/16/22  P. v. Larraburu CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PAUL GABRIEL LARRABURU,<br><br>    Defendant and Appellant. | H048362<br>(Santa Clara County<br> Super. Ct. No. C1804870) |

A jury convicted appellant Paul Gabriel Larraburu of several offenses arising out of an altercation at the home of his ex-girlfriend, Loraine S.,[1] including the infliction of corporal injury on a partner while having a prior conviction for the same crime within seven years (count 2).  Larraburu was also charged with assault by means of force likely to produce great bodily injury (count 1).  Though the jury acquitted Larraburu of that charge, on count 1 it found him guilty of the lesser included offense of misdemeanor assault.  The trial court sentenced Larraburu to eight years in prison.

On appeal, Larraburu claims his conviction on count 1 for assault is barred under a judicially created exception to Penal Code section 954[2] and by constitutional principles of

---

[1] Loraine S. and Loraine S.'s daughter, Valerea G., are alleged as victims in the information.  We refer to the victims and other witnesses by first name and last initial to protect their privacy interests.  (See Cal. Rules of Court, rule 8.90(b)(4), (10)–(11).)

[2] Unspecified statutory references are to the Penal Code.

double jeopardy. He observes that simple assault is a lesser-included offense of count 2 and contends the jury's verdict does not support a finding that separate acts resulting in separate injuries supported the different counts.

For the reasons explained below, we reject Larraburu's contentions and affirm the judgment. We also note an error in the abstract of judgment and direct the superior court clerk to prepare a corrected abstract.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Procedural Background*

In November 2019, the Santa Clara County District Attorney filed a second amended information (information) charging Larraburu with assault by means likely to produce great bodily injury upon Loraine S. (§ 245, subd. (a)(4); count 1), infliction of corporal injury on a former cohabitant, Loraine S., with a prior conviction within seven years (§ 273.5, subd. (f)(1); count 2), violation of a protective order within seven years of a prior violation (§ 166, subd. (c)(4); count 3), and misdemeanor battery upon Valerea G. (§ 243, subd. (a); count 4). The information also alleged that Larraburu had suffered two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12) for assault with a deadly weapon (§ 245, subd. (a)(1)) and assault with a firearm (§ 245, subd. (a)(2)).

In December 2019, a jury found Larraburu guilty of all counts as charged, except for count 1, for which the jury convicted him of the lesser included offense of simple assault (§ 240). The jury also found true the allegation that Larraburu had suffered a prior conviction within seven years of the violation of section 273.5, subdivision (a), that he had suffered a prior conviction within seven years for a violation of a protective order (§ 166, subd. (c)(1)), and that his conduct in violating the protective order involved an act of violence. In January 2020, Larraburu admitted suffering the prior strike convictions alleged in the information.

In July 2020, the trial court sentenced Larraburu to eight years in prison on count 2 and a consecutive term of 16 months on count 3, which the court stayed pursuant to

section 654.  As to misdemeanor counts 1 and 4, the court imposed concurrent sentences of 100 days, which it deemed served.

### B. Evidence Presented at Trial[3]

#### 1.  The September 2018 Incident

By late September 2018,[4] Larraburu and Loraine S. had dated off and on for three or four years.  They had most recently broken up two or three weeks earlier.  On September 25,[5] Larraburu contacted Loraine S. to tell her he was going to stop by the house where she lived with her two adult daughters and two grandchildren.  Loraine S. was home with her daughter, Valerea G., Peter S. (Valerea G.'s boyfriend), and Valerea G.'s son.

That evening, Larraburu arrived to pick up items he had at the house, including a toolbox, some clothing, and paperwork.  According to Loraine S., she and Larraburu were both "very short" with each other and "wanted to get it over with."  Larraburu went to the garage and she went to her room because she wanted to "give him his space."  She was lying in bed watching T.V. when Larraburu entered and began to gather the rest of his belongings from the closet and a box beneath the dresser.  She asked him to hurry up and leave.  Larraburu asked her to get him the paperwork for a vehicle (a 1964 Riviera) that they owned together.  She told him to leave and they would take care of it later.

Larraburu responded angrily and began yelling and walking toward Loraine S.  He stood over her as she lay on the bed and punched her in the face with a closed fist.  The blow landed in her eye.  She tried to get up but Larraburu pushed her down and grabbed her throat.  She tried to scream for her daughter and Peter S. to help her.  She was not

---

[3] In addition to the testimony described below, the prosecution presented expert testimony on intimate partner violence and domestic violence.  That evidence is not relevant to this appeal.

[4] Unless otherwise indicated, all dates occurred in 2018.

[5] There is some inconsistency in the trial testimony as to the date of the September 2018 incident, which the prosecutor referred to as "September 28," though the information and other trial testimony confirms the date was September 25.

able to get up off the bed or to overpower him. Larraburu struck her several times on her arm and head. He was holding her down, "probably" around her neck but she did not remember if he put pressure on her windpipe. Her daughter, Valerea G., came into the room and tried to get Larraburu off. Then Valerea G. yelled to Peter S. The next thing Loraine S. remembered was talking with police officers at the front door.

Valerea G. testified that at the time of the incident on September 25, she was in the house with her boyfriend (Peter S.) and her son, who was already asleep. Valerea G. and her boyfriend were in her bedroom when she heard her mother calling for her, but in a "screeching" or "weird screaming way" that sounded like her voice was being restrained. Valerea G. ran to her mother's bedroom. The first thing she saw was Larraburu hitting Loraine S. in the face with a "full fist." Loraine S. was lying in the bed. Valerea G. saw Larraburu hit Loraine S. four or five times. Valerea G. also later saw finger marks on Loraine S.'s neck.

Valerea G. tried to pull Larraburu off of Loraine S. Larraburu pushed Valerea G. away toward the windowsill, then hit Valerea G. twice in the back and once in the face. Valerea G. called for Peter S., who arrived and told Larraburu he needed to leave. Peter S. began shoving Larraburu out the door. Valerea G. joined Peter S. outside to make sure Larraburu left. Larraburu punched Valerea G. on the left side of her torso. Valerea G. told Larraburu she was calling the police, and he left before the police arrived.

Peter S. testified that he was in Valerea G.'s room at the back of the house when he heard "loud voices," which he thought was "a normal argument" and ignored. He and Valerea G. were already getting ready for bed. Valerea G. went to see what Loraine S. wanted. Peter S. was dozing off when Valerea G. screamed his name to come to her. He got to the room and saw Valerea G. was upset and telling Larraburu to get out. Larraburu "kind of" struck Valerea G. with a straight punch and hit her on the face. Peter S. became "really upset," told Larraburu he needed to get out, and tried to push him toward the door. Loraine S. was lying on the bed and starting to get up. Peter S. did not see her

4

face and was focused on getting Larraburu out of the room.  Peter S. took Larraburu outside.  The pair exchanged pushes and blows back and forth before Larraburu got in his car and drove away.

The trial court admitted a copy of a certified restraining order served on Larraburu on September 13, 2017, which expired on September 13, 2020.  The restraining order was a no-contact order and required Larraburu to stay away from Loraine S.'s house where the September 2018 incident occurred.

City of San Jose Police Officer Marco Mercado testified that he responded to the incident and arrived at the house.  Loraine S. opened the front door and was holding a frozen product to her left eye, where he saw a "notable swelling."  The eye was "pretty much shut."  Officer Mercado also observed contusions and welts to Loraine S.'s left hand and wrist and forearm area.  She appeared calm and said she would seek her own medical attention.

Officer Mercado testified that one of the standard questions in conducting an assessment in response to a report of domestic violence is " 'Has the person tried to strangle you?' "  When Mercado asked this question of Loraine S., she explained that " 'that's how this whole thing started.' "  She recounted that Larraburu had "put his hands around her – tried to choke her, and she [had] pushed him away."  Though Loraine S. told officers the first thing that happened was Larraburu tried to put his hands around her neck and choke her, she testified at trial to her belief that the punching occurred first.  Loraine S. also testified that she was certain about what happened but unsure in "what order" the events occurred.  Loraine S. also told officers that Larraburu tried to strike Valerea G.  She did not know how much Valerea G. saw because she (Loraine S.) was "covering up" to protect her face from being hit.

On redirect, Loraine S. testified that after thinking about it "all night" after the first day of testimony, she believed she "was laying on the bed when he came towards [her]," she "put [her] hand and [her] arm up, . . . like, to back [him] up," and "[t]hat's when he

5

grabbed [her] throat. And he sa[id], you're not going to do this to me. And he held [her] – pushed [her] so [she] couldn't get up. [She] couldn't move. He held [her], and then [she], kind of – [her] foot pushed him off. And that's when [she] got hit in the eye."

On a scale of one to 10, with 10 being excruciating pain, Loraine S. testified that her pain that day was a 10. Her eye was swollen shut. She went to the hospital the next day for treatment. At the hospital, they cut and drained the eye which relieved the pressure from the swelling. She required pain medication and was in pain for about one week. The discoloration on her face lasted about three to four weeks.

Loraine S. left Larraburu voicemail messages after the September incident saying things like " 'I'm going to fuck you up' " and " 'I'm going to win this one. I love it.' " In another voicemail message, she told Larraburu, " 'I'm going to fuck you up for real this time. No car, no clothes. Nothing you have at my house you get. I'm going to fuck you up, Paul, you little bitch, punk-ass bitch, motherfucker.' "

2. Prior Incidents

Loraine S. testified at trial about prior incidents in which Larraburu was violent towards her.

In 2013, Loraine S. and Larraburu got into an argument over the 1964 Riviera vehicle, which they had bought together but which Larraburu had gifted to Loraine S. She was driving with Larraburu in her car on an expressway when he grabbed the steering wheel and jerked it. She pulled over, told him to get out, and refused to drive further with him. He slammed the door and walked away. Later, when he returned to the house, Loraine S. told him to gather his belongings and get out. Larraburu went into Loraine S.'s bedroom to look for the Riviera's keys and registration, which was in Loraine S.'s name. Larraburu punched Loraine S. on the head and pushed her onto the bed. Later, in the garage, Larraburu told her that if he could not have the car, no one could have it. Larraburu then took a pickaxe to the car. He broke four of the car windows and damaged the rear body. Larraburu then left. The police came and took a

6

report. At the time, Loraine S. told the police officer that before attacking the Riviera, Larraburu had told her that if he was going to jail, it was going to be "for something."

At the time of the 2013 incident, Loraine S. did not want to testify against Larraburu. She transferred title of the Riviera to him at his request so that he would not be convicted of felony vandalism. Loraine S. and Larraburu also entered into a private agreement that, once the court proceedings were completed, Larraburu would transfer title of the car back to Loraine S. Charges were filed against Larraburu, and a protective order issued preventing him from having contact with Loraine S. In April 2014, Larraburu was convicted of willfully inflicting corporal injury resulting in a traumatic condition upon Loraine S., a person with whom he previously had a dating relationship (§ 273.5, subd. (a)).

Another incident occurred in 2016, when she and Larraburu were not dating and not living together. Loraine S. went to her car in the evening to get her backpack out of the trunk. It was dark outside. She heard a hissing noise coming from the left side of the car, and Larraburu stood up next to the vehicle. Loraine S. assumed he had popped her tire. She and Larraburu "exchanged words," and Larraburu tried to pull her out of his way. Loraine S. called to her daughter, and Larraburu took off running down the street. Larraburu was convicted of willfully and knowingly violating a protective order or stay-away order issued pursuant to section 136.2 (§ 166, subd. (c)(1)).

### 3. Loraine S.'s Prior Convictions

Loraine S. was convicted of misdemeanor welfare fraud in 2001. She testified at trial that she did not recall whether she was also arrested for domestic violence in 2001 and did not recall two convictions for theft of utilities in San Mateo County in 2003 and 2004. The parties stipulated that Loraine S. was arrested in 2001 but was not charged and was released from custody.

## II. DISCUSSION

Larraburu contends that his conviction on count 1 for simple assault (§ 240) should be reversed and dismissed because simple assault is a lesser included offense of the crime for which he was convicted on count 2, the infliction of corporal injury on Loraine S., a former cohabitant (§ 273.5), and he may not be convicted of both offenses. Larraburu asserts that the offense for inflicting corporal injury is a "continuing offense" for which multiple convictions "are permissible where separate acts of violence lead to separate injuries." He further asserts that "[w]ithout a separate act causing concomitant injury, the act of holding [Loraine] S. down while striking her becomes subsumed in the continuing violation of section 273.5." Larraburu claims that his multiple convictions violate the judicially created exception to section 954 and the constitutional protection against double jeopardy.[6]

The Attorney General responds that the simple assault conviction was proper because the verdict on count 1 was based on Larraburu's act of strangling Loraine S. and that act was separate from his acts of injuring her and causing a traumatic condition that formed the bases for count 2.

Section 954 sets forth the general rule that defendants may be charged with and convicted of multiple offenses based on a single act or an indivisible course of conduct. It provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court." (§ 954.)

---

[6] We note that Larraburu makes no argument under section 654 as to his county jail sentence on count 1.

"In general, a person may be convicted of, although not punished for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of any number of the offenses charged." ' " (*People v. Reed* (2006) 38 Cal.4th 1224, 1226, italics omitted.)

Although section 954 generally allows for multiple convictions, under a judicially created exception to that doctrine a defendant charged with an offense may *not* be convicted of both that offense and a lesser included offense. (See *People v. Montoya* (2004) 33 Cal.4th 1031, 1034; *People v. Pearson* (1986) 42 Cal.3d 351, 355 (*Pearson*), rejected on other grounds in *People v. Vidana* (2016) 1 Cal.5th 632, 651; *People v. Moran* (1970) 1 Cal.3d 755, 763.) Nevertheless, "a defendant may be convicted of multiple crimes—even if the crimes are part of the same impulse, intention or plan—as long as each conviction reflects a completed criminal act." (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518 (*Kirvin*).)

"Simple assault is the 'unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' (§ 240.) The offense of infliction of corporal injury occurs where a person 'willfully inflicts corporal injury resulting in a traumatic condition upon a victim described [in the statute] . . . .' (§ 273.5, subd. (a).) For purposes of section 273.5, the term 'willfully' simply means an intent to commit the act that results in corporal injury. [Citation.] The term 'corporal injury' is unambiguous and means bodily injury. [Citation.] Finally, the term 'traumatic condition' is statutorily defined to mean 'a condition of the body, such as a wound, or external or internal injury, . . ., whether of a minor or serious nature, caused by a physical force.' (§ 273.5, subd. (d).)" (*People v. Serrano* (2022) 77 Cal.App.5th 902, 919 (*Serrano*); see CALCRIM No. 840.)

We accept the premise underlying Larraburu's contention that simple assault is a lesser offense of infliction of corporal injury. Indeed, "[i]t is evident that a person who intends to inflict, and does inflict, bodily injury on a person which results in a traumatic

9

condition on that person, necessarily commits an assault. Thus, simple assault is a lesser included offense of infliction of corporal injury result[ing] in a traumatic condition." (*Serrano*, *supra*, 77 Cal.App.5th at p. 919.) However, the judicially created exception to section 954 does not bar convictions for a greater and lesser offense if each is based on a separate completed criminal act. (See *People v. Benavides* (2005) 35 Cal.4th 69, 98 (*Benavides*); *Pearson*, *supra*, 42 Cal.3d at p. 355; see also *Kirvin*, *supra*, 231 Cal.App.4th at p. 1519.)

"[T]he crime described by section 273.5 is complete upon the willful and direct application of physical force upon the victim, resulting in a wound or injury." (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477 (*Johnson*).) Simple assault "requires an act that by its nature would directly and probably result in the application of physical force to a person. [Citations.] This is the physical act of assault that creates a potential for harm to a victim. The crime is complete even if the act does not actually result in a physical injury to the victim." (*People v. Harring* (2021) 69 Cal.App.5th 483, 503 (*Harring*).)

In the present case, the trial court instructed the jury that to convict Larraburu of simple assault of Loraine S. in count 1 (as a lesser offense of the greater charged offense (§ 245, subd. (a)(4)), the jury had to unanimously find that Larraburu "committed that offense by acts of strangulation" upon Loraine S. The court also instructed the jury that to convict Larraburu of inflicting corporal injury on Loraine S. as charged in count 2, the jury had to find unanimously that Larraburu "committed that offense through hitting [Loraine S.] while she was in her bedroom." Thus, in accord with the statutory elements, the simple assault crime was complete when Larraburu strangled Loraine S., having done so willfully with the present ability to apply force and which act by its nature would directly and probably result in the application of physical force to a person. (See *Harring*, *supra*, 69 Cal.App.5th at p. 503; see also CALCRIM No. 915.) By contrast, the infliction of corporal injury offense was complete upon Larraburu's willful and direct

10

application of physical force upon Loraine S. "through hitting" that resulted in a wound or injury. (See *Johnson*, *supra*, 150 Cal.App.4th at p. 1477.)

Larraburu asserts that because his simple assault conviction did not require that the jury find a separate injury, the act of strangulation on which his conviction was based "becomes subsumed in the continuing violation of section 273.5." We do not agree. The elements of simple assault do not require the prosecution prove that Larraburu actually touched someone or that anyone was actually injured by his act. Thus, simple assault offense was complete regardless of any injury and, critically, was accomplished by an act that is different than the acts upon which the conviction for infliction of corporal injury was based.

Consistent with the jury instructions, the evidence supports the jury's requisite findings (in light of the specific instructions given here) that Larraburu's convictions on counts 1 and 2 were based on separate acts. Loraine S. testified that Larraburu pushed her down on her bed and grabbed her throat. Though she was not certain whether he had compressed her windpipe, she was sure that Larraburu had put his hands around her throat and "strangled" or "choked" her. She told Officer Mercado that Larraburu's attempt to choke or strangle her was " 'how it started.' "

Additionally, Loraine S. testified that Larraburu punched her in the eye and caused traumatic injury. As a result, she could not open her eye. Larraburu also punched Loraine S. "about five times" on her arm, wrists, and head. The evidence demonstrates ample basis for the jury to conclude that Larraburu's act of strangulation, which was necessary to convict him on count 1, was separate from his acts of injuring Loraine S. and causing a traumatic condition, which was necessary to convict him on count 2. (See *Benavides*, *supra*, 35 Cal.4th at p. 98; cf. *Serrano*, *supra*, 77 Cal.App.5th at p. 920.) Therefore, under the circumstances presented here, the counts do not fall within the judicially created exception to section 954 barring convictions for necessarily included offenses. Likewise, we decide that Larraburu's constitutional double jeopardy claim

11

lacks merit. (See *Benavides*, at p. 98; see also *People v. Sloan* (2007) 42 Cal.4th 110, 121; *Ohio v. Johnson* (1984) 467 U.S. 493, 501.)

In support of his argument, Larraburu relies on *Johnson*, *supra*, 150 Cal.App.4th 1467 and *People v. Thompson* (1984) 160 Cal.App.3d 220. Those cases, however, are inapposite because neither addressed a contention akin to Larraburu's nor held that any simple assault offense committed by a separate act during the same course of conduct as an infliction of corporal injury offense, but which did not result in injury, merges with the infliction of corporal injury offense.

Although not raised by either party, we observe that the abstract of judgment does not indicate the length of the punishment imposed and then stayed, under section 654, for count 3 (violation of protective order within seven years of a prior). Although we affirm the judgment, we direct the trial court to prepare a new abstract of judgment which indicates the term imposed (surrounded by parentheses in the "TIME IMPOSED" column of item No. 1) for count 3 on which the punishment was stayed pursuant to section 654.

### III.  DISPOSITION

The judgment is affirmed. The superior court clerk is ordered to prepare a new abstract of judgment which indicates the term imposed (surrounded by parentheses in the "TIME IMPOSED" column of item No. 1) for count 3 on which the punishment was stayed pursuant to Penal Code section 654.

_____
                  Danner, J.


WE CONCUR:




_____
Bamattre-Manoukian, Acting P.J.






_____
Wilson, J.








**H048362**
***People v. Larraburu***