Filed 10/27/25  P. v. Cox CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TRACY COX,<br><br>        Defendant and Appellant. | A172586[1]<br><br>(Riverside County Super. Ct. No. RIF2103222) |

In April 2021, defendant Tracy Cox got into an argument with her then-boyfriend S.S., hit him in the face, and struck him over the head three times with a candle inside a mason jar.  A jury found her guilty of corporal injury on a cohabitant and assault with a deadly weapon, and she was placed on three years probation.  Cox argues that the trial court erred in failing to instruct the jury on unanimity and that her conviction of both offenses is prohibited because assault with a deadly weapon is a lesser included offense of corporal injury on a cohabitant.  We affirm.

---

[1]     On February 25, 2025, the Chief Justice ordered this case transferred from the Fourth Appellate District, where it had case number E084922, to our district, where it was assigned case number A172586.

1

# BACKGROUND

## The Charges and Trial

On July 30, 2021, the Riverside County District Attorney's Office filed a complaint against Cox, and on July 27, 2022, the operative information, charging her with corporal injury to a cohabitant on S.S. (Pen. Code[2], § 273.5, subd. (a)) (count 1) and assault with a deadly weapon—to wit, a "glass candle jar" (§ 245, subd. (a)(1)) (count 2). The information further alleged with respect to both counts that Cox personally inflicted great bodily injury upon S.S. under section 12022.7, subdivision (e).

A brief trial by jury took place in June of 2024, with one day of testimony, largely that of S.S. And in relevant part, some of that testimony was as follows.

After dating Cox "on and off for roughly two years" while they were in high school, S.S. and Cox began dating again in 2018. In January of 2021, in order to provide help to S.S.'s elderly parents, the couple moved into an RV parked outside their home.

On April 14, 2021, Cox was helping S.S.'s parents in the house and S.S. was doing yard work. Cox and S.S. began drinking "around noon," with S.S. drinking beer and Cox "drinking her vodka, like usual." Toward the end of the day, they took an hour-long break to have dinner with S.S.'s parents, after which S.S. stopped working and cleaned up the yard work. Eventually the couple walked back to their RV together.

Once they returned to their RV, S.S. and Cox "were sitting at the dinette. And [Cox] . . . wanted to have intercourse, and I did not, so I told her I was going to go to bed. I went in and laid down on the bed. I—I don't exactly know exactly how long I was laying down for, but all of a sudden she

---

[2] Further undesignated statutory references are to the Penal Code.

2

gets on my back and starts punching me in the side of the face." Cox hit S.S. three times on his right cheek, and they began arguing. Cox got off of S.S., and he thought "Nice, I can relax now." But 30 seconds later, she hit him in the head with what he described as "half a mason jar, roughly six inches in diameter, five to six inches tall, with a candle inside of it." They "had a couple exchanges of words," although S.S. could not remember exactly was said. S.S. went back to the dinette and sat down, and Cox then "came in from the side" and struck him two more times in the back of the head with the candle. According to S.S., "[a] minute" elapsed between the first time he was hit with the candle and the second two strikes. S.S. then "blacked out" for what he estimated was two or three minutes.

When S.S. "came to," he "noticed that Mrs. Cox had left the trailer, so I went into my parents' house and knocked on the sliding glass door. My dad answered the door, saw me bleeding 'profusedly' [*sic*] and told me to get in the bathtub. And then my mom woke up, and she called 911." S.S. had an abrasion on his right cheek and a one-inch laceration on the back of his head. He was later taken to the hospital, where he received a CAT scan, an MRI, and stitches.

On July 16, 2021, S.S. married Cox "because we were in love." As noted, the initial complaint in this case was filed some two weeks later, on July 30. And on November 16, S.S. spoke to defense investigator Daniel Goldsmith about the incident. S.S. told Goldsmith that he had slammed the door to the RV, a clock had fallen off the wall, and he "cut his head on a piece of glass." At trial, he characterized this description as "a story that me and [Cox] had made up," and a "stupid idea because we were trying to stay together, so I told [the investigator] a bunch of BS."

3

The defense's only witness was Goldsmith, who testified briefly that during his interview with S.S., S.S. told him that at the time of the incident, he was suffering from auditory and visual hallucinations caused by "taking the pill Ambien and . . . drinking a lot of alcohol," that while intoxicated, he had slammed the door to the trailer causing glass in a clock to break, and that "parts of the glass went onto a couch cushion, and then he had admitted that he fell asleep or passed out on the couch and laid his head apparently on that glass."

In closing argument, the prosecutor characterized the case as "straightforward . . . because ultimately what it boils down to is whether you believe [S.S.]'s testimony and what he testified to yesterday or not." And defense counsel likewise suggested to the jury that "we're dealing with a he-said/she-said scenario," and after arguing that S.S. "was debilitated by a disease, a horrible disease, a lifelong endeavor, alcohol addiction," asserted that "[o]ne person is enough to be believable but not this person, ladies and gentlemen."

**Verdict and Sentencing**

On June 21, after deliberating for approximately half an hour, the jury found Cox guilty on both counts and found true the great bodily injury enhancements with respect to each count.

At sentencing on October 1, the trial court stayed the sentence on count 2 under section 654 "as these crimes arose from the same operative facts and are essentially indistinguishable from each other." And after noting that the "[t]he evidence regarding the [great bodily injury] enhancement[s] was largely by way of photographs of the victim's injury," leaving the court with "lingering question[s]" as to whether that injury was "greater than minor or moderate harm," the court struck the punishment on those enhancements.

4

The trial court then sentenced Cox to the middle term of three years on count 1, but suspended execution of sentence and placed Cox on three years formal probation, with various terms and conditions.

Cox filed a notice of appeal.

## DISCUSSION

### The Trial Court Did Not Err in Failing to Give a Unanimity Instruction

Cox argues that the trial court erred in failing to instruct the jury on unanimity sua sponte[3], because there were "at least three discrete acts that had the potential to constitute the assault with a deadly weapon," and "at least four discrete acts had the potential to constitute" corporal injury to a cohabitant, and "the prosecutor did not make an election upon which act they were relying."

"In a criminal case, a jury verdict must be unanimous. [Citations.] . . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]

---

[3] In summarizing the jury instruction conference, the trial court indicated that CALCRIM No. 3500 on unanimity was "being withdrawn," although the court had no record of "who was withdrawing" it. The instruction was withdrawn without objection from either party.

CALCRIM No. 3500 provides in part: "The People have presented evidence of more than one act to prove that the defendant committed the charged offense . . . . You must not find the defendant guilty . . . unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed." (CALCRIM No. 3500.)

"This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' [Citation.] . . . . 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); see *People v. McDaniel* (2021) 12 Cal.5th 97, 145.)

"There are, however, several exceptions to this rule. For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' (*People v. Crandell* (1988) 46 Cal.3d 833, 875), or 'when . . . the statute contemplates a continuous course of conduct or a series of acts over a period of time.' (*People v. Thompson* (1984) 160 Cal.App.3d 220, 224.) There also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime. (*People v. Carrera* (1989) 49 Cal.3d 291, 311–312.)" (*People v. Jennings* (2010) 50 Cal.4th 616, 679.)

Cox's opening brief focuses entirely on the question of whether the statutes at issue contemplate a continuous course of conduct. She argues that the language of the statue defining assault with a deadly weapon (§ 245, subd. (a)(1)) "does not contemplate" such a course of conduct, although she does not even quote, much less discuss, that language. And she attempts to distinguish *People v. Thompson*, *supra*, 160 Cal.App.3d 220, where our colleagues in Division Three held that the statutory language defining corporal injury on a cohabitant (§ 273.5, subd. (a)) *does* contemplate a course

6

of conduct over time, and thus falls within the continuous-course-of-conduct exception. (See *People v. Thompson, supra*, 160 Cal.App.3d at pp. 224–226.)

But it is the exception for closely connected acts that form one transaction—which Cox's opening brief does not even discuss—that is dispositive of her unanimity argument here. It applies when "(1) 'the acts are so closely connected in time as to form part of one transaction'; (2) 'the defendant tenders the same defense or defenses to each act'; and (3) 'there is no reasonable basis for the jury to distinguish between them. [Citations.]' (*People v. Crandell* (1988) 46 Cal.3d 833, 875.) 'This exception " 'is meant to apply not to all crimes occurring during a single transaction but only to those "where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto." [Citation.]' [Citation.]" [Citation.]' (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1011.)" (*People v. Lueth* (2012) 206 Cal.App.4th 189, 196; see *People v. Williams* (2013) 56 Cal.4th 630, 682 [unanimity instruction may not be required where " 'the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them' "].)

Such is precisely the case here. The acts testified to by S.S. could hardly be more "closely related in time and place"—according to his testimony, approximately two minutes elapsed between the time Cox first struck him on the cheek and the third time she hit him with the candle in a mason jar. (See *People v. Williams, supra*, 56 Cal.4th at p. 682 [unanimity instruction not required criminal acts took place " 'within a very small window of time' "]; *People v. Benavides* (2005) 35 Cal.4th 69, 98 [same].) And the entire episode took place in the couple's RV, a space S.S. described as "fairly small," with the distance between the bedroom and the dinette

7

measuring "[t]en feet probably."[4] Cox offered the same defense to each of the charged acts, namely putting S.S.'s credibility into question by impeaching him with his alternate recounting of the incident to a defense investigator, as well as his statements to that investigator regarding his use of Ambien and alcohol at the time of the incident. Indeed, and as noted, defense counsel suggested to the jury during closing argument that "we're dealing with a he-said/she-said scenario," and argued that "[o]ne person is enough to be believable but not this person, ladies and gentlemen."

Given that the jury evidently resolved this "he-said/she-said" credibility dispute in "his" favor, Cox has offered no reasonable basis for it to have further concluded that she committed some of the charged acts, but not others.[5] As counsel for both parties acknowledged during their closing arguments, "[t]he essence of the jury's task was to decide who was telling the truth, the appellant or [S.S.] There was no possibility of some jurors believing one defense, and some another." (*People v. Thompson, supra,* 160 Cal.App.3d at p. 226.) Thus, the requirement that the trial court give a unanimity instruction sua sponte did not apply. (*People v. Williams, supra,* 56 Cal.4th at p. 682.) Or, to put it differently, any failure to give such an instruction was harmless error.[6] (See, e.g., *People v. Fish* (2024) 102

---

[4] On reply, after acknowledging the exception for acts that form one transaction for the first time, Cox simply asserts that it does not apply because the "acts occurred in different locations within the RV and were separated by time." We are not persuaded.

[5] Cox's reply brief simply asserts, without explanation or citation to authority, that "[w]hile [Cox] generally attacked S.S.'s credibility, the jury could have believed S.S. regarding some acts but not others. For example, the jury could have found S.S. credible about being punched but not about being hit with the glass jar, or vice versa." Again, we are not persuaded.

[6] In *People v. Leuth, supra,* 206 Cal.App.4th 189, the Court of Appeal observed that the " 'continuous-course-of-conduct exception' . . . is a catch-all

8

Cal.App.5th 730, 738 [failure to give unanimity instruction harmless where "victim's testimony, once credited by the jury, necessarily establishe[d]" that defendant committed two offenses and defendant "identifie[d] no basis on which a rational juror could conclude that she was being truthful about one but not the other"]; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 577 [where "the defendant offered the same defense to all criminal acts and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error"]; *People v. Thompson* (1995) 36 Cal.App.4th 843, 853 ["[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless"].)[7]

### The Prohibition on Multiple Convictions Does Not Apply

Cox argues that "[g]iven the specific facts of this case," assault with a deadly weapon offense is a lesser included offense of corporal injury on a cohabitant, because her "specific actions"—"using a glass jar to hit her live-in

---

term, which, somewhat confusingly, embraces two wholly distinct principles," and that with respect to the "exception" for closely connected acts that form one tranaction, "it is not at all clear that this is truly an *exception*. It would seem more accurate to say that, in this situation, a unanimity instruction is required, but the failure to give one is harmless." (*Id.* at p. 196.)

[7] In her opening brief, Cox first contends that the failure to give a unanimity instruction when required is "structural error that is per se reversible," but then goes on to acknowledge the recent decisions of this district have evaluated such error under the harmless beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (See, e.g., *People v. Jones* (2024) 106 Cal.App.5th 1085, 1096; *People v. Fish*, *supra*, 102 Cal.App.5th at p. 738.) We need not discuss the issue further, as we have found no error. And for the same reasons, even assuming error, we conclude it was harmless beyond a reasonable doubt.

boyfriend in a manner that caused a cut to his head—satisfy both the elements of section 245(a)(1) and the elements required to sustain a conviction for section 273.5(a)." She concludes that she could not be convicted of both crimes based on the " 'rule prohibit[ing] multiple convictions based on necessarily included offenses.' " (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) We are not persuaded.

As our Supreme Court explained in *People v. Reed* (2006) 38 Cal.4th 1224 (*Reed*): "In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." (§ 954, italics added; *People v. Ortega* (1998) 19 Cal.4th 686, 692.)' (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. (*People v. Ortega*, *supra*, at p. 692; *People v. Pearson* (1986) 42 Cal.3d 351, 359–360.)" (*Reed*, *supra*, 38 Cal.4th at pp. 1226–1227.) Here, the trial court stayed execution of sentence on the corporal injury on a cohabitant count, so multiple punishment is not at issue. This case concerns only multiple conviction.

"A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' (*People v. Montoya*, *supra*, 33 Cal.4th at p. 1034.) '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the

10

latter is a lesser included offense within the former.' (*People v. Lopez* (1998) 19 Cal.4th 282, 288.)" (*Reed*, *supra*, 38 Cal.4th at p. 1227.)

Reed went on to hold that "the accusatory pleading test does not apply in deciding whether multiple conviction of charged offenses is proper. . . .  In deciding whether multiple conviction is proper, a court should consider only the statutory elements.  Or, as formulated in [*People v.*] *Scheidt* [(1991) 231 Cal.App.3d 162], 'only a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding.  An offense that may be a lesser included offense because of the specific nature of the accusatory pleading is not subject to the same bar.' (*People v. Scheidt*, *supra*, at pp. 165–166.)" (*Reed*, *supra*, 38 Cal.4th at p. 1229; see *People v. Delgado* (2017) 2 Cal.5th 544, 570.)

Under *Reed*, Cox's argument that "[g]iven the specific facts of this case," and how it was "actually charged and prosecuted," assault with a deadly weapon offense is a lesser included offense of corporal injury on a cohabitant must fail.  Instead, in evaluating her argument, we "consider only the statutory elements" of the two offenses.  (*Reed*, *supra*, 38 Cal.4th at p. 1229; see *In re L.J.* (2021) 72 Cal.App.5th 37, 48 ["one offense is necessarily included within another 'if the statutory elements of the greater offense include all of the statutory elements of the lesser offense' "].)  And because assault with a deadly weapon includes the use of a deadly weapon as a statutory element of the offense, it cannot be deemed a lesser included offense of inflicting corporal injury on a cohabitant, which does not.  (See §§ 245, subd. (a)(1), 273.5, subd. (a).)

## DISPOSITION

The judgment is affirmed.

_____

RICHMAN, J.

We concur.

_____

STEWART, P.J.

_____

MILLER, J.

(A172586)