Filed 12/23/22  P. v. Stanford CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JOHNNY STANFORD, Defendant and Appellant. | B318464 (Los Angeles County Super. Ct. No. PA096338) |

Appeal from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed in part and remanded in part with directions.

Debbie Yen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial, defendant Johnny Stanford was convicted of inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a); count 1),[1] making criminal threats (§ 422, subd. (a); count 2), and false imprisonment by violence (§ 236; count 3). At his sentencing, defendant admitted to two prior serious felony convictions under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12). The trial court sentenced defendant to state prison for a term of 25 years to life on the criminal threats charge and lesser concurrent sentences on the remaining two counts.

On appeal, defendant contends we should reverse his corporal injury and criminal threats convictions for the trial court's failure to sua sponte give a unanimity instruction. Defendant separately challenges his sentence by arguing the trial court erred in denying his *Romero*[2] motion and by refusing to stay his concurrent sentences, and that his sentence amounts to cruel or unusual punishment. We find no merit in any of these contentions.

We do agree with defendant that the trial court erred by adding multiple five-year enhancements to his sentences on the corporal injury and false imprisonment counts. Accordingly, we modify defendant's sentence by striking those enhancements, and affirm the judgment in all other respects.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

# FACTUAL BACKGROUND

On the morning of April 2, 2021, Angela S. ran into a recycling yard in Sun Valley, California.[3] Angela was barefoot and appeared to have urinated on herself. The supervisor at the recycling yard observed bruises on Angela's neck and face. Angela, crying hysterically, informed the supervisor that her boyfriend was trying to kill her and asked the supervisor to call the police. Both Angela and the supervisor spoke to the 911 dispatcher. The supervisor reported that Angela stated her boyfriend was going to kill her, and described Angela as "bruised up." When asked by the dispatcher whether Angela was awake, the supervisor responded that she was "really hysterical right now. She's crying. She's yelling. She's very scared that her boyfriend's gonna come over and see her and try to beat her up." Angela also spoke to the dispatcher, reporting that she had been trying to escape the recreational vehicle (RV) where she lived with defendant, but could not. She stated that she had climbed out a window when her boyfriend was momentarily at the back of the RV. She stated that her boyfriend wanted to kill her and asked for an ambulance. Security camera footage played at the trial showed Angela climbing out a window of the RV and running across the street toward the recycling yard.

Los Angeles Police Department Officers Zaman and Foster answered the 911 call and met Angela at the recycling yard. At that time, Angela repeated much of what she had told the 911 dispatcher: that her boyfriend would not let her leave the RV, and that she "threw [her]self out of that window" in order to

---

[3] We use the victim's first name to protect her privacy (see Cal. Rules of Court, rule 8.90(b)(4)), and not out of any disrespect.

escape. She added that her boyfriend had choked her the night before, and that he had threatened to "grab [Angela] from behind and rip [her] face off." She had been unable to call for help because he would not allow her to have a phone. Angela told the officers that her neck hurt where her boyfriend had choked her, and her ankles hurt from climbing out of the RV when she made her escape. While Officers Zaman and Foster interviewed Angela, other officers approached the RV and demanded that defendant come out of the vehicle. After repeated requests, defendant exited the RV and was arrested. Paramedics transported Angela to a hospital.

At the hospital, Angela was interviewed again by Officers Zaman and Foster. She reported that on April 1, she had bought a birthday card and cookies as a gift for defendant, although it was not his birthday. At first defendant thanked her for the card and cookies, but then he questioned why she had given him a birthday card when it was not his birthday. He accused Angela of lying and of infidelity. Defendant struck Angela, lifted her by the neck and threw her on the bed, where he jumped on her and choked her. He threatened Angela, telling her "I'm gonna fuckin' kill you." Angela begged defendant to stop; he did, and started crying. Eventually defendant "calmed . . . down" and apologized to Angela, and defendant and Angela left the RV to take a walk. They returned to the RV between 4:00 and 5:00 p.m.

After Angela and defendant returned to the RV, defendant asked her for her phone. While examining the contacts stored on the phone, defendant asked Angela "This person's new. Who is he?" Angela responded that it was her doctor. Late that night, after Angela had gone to sleep, defendant awakened her to question her about a letter he had found. Angela had written it

4

to her daughter's father. Defendant accused Angela of planning to leave him and return to her daughter's father. He "socked" Angela in the jaw and choked her while telling her "Bitch, I'm gonna fuckin' kill you now. You're dead." He continued to threaten Angela, saying for example "Bitch, just fuckin' tell me the truth because no matter what you say, I'm dead, you're dead." Angela was unable to call the police that night because defendant had taken her phone. Not until the morning, when defendant was alone in the bedroom at the rear of the RV, was Angela able to open the kitchen window and climb out.

While at the hospital, Angela was interviewed by medical staff. Her medical records, introduced into evidence, stated as follows: "Patient was reportedly assaulted by her boyfriend who reported [*sic*] choked, kicked, punched and scratched her earlier today. Patient with complaint of neck pain, chest pain, abdominal pain. She has multiple scratches on her face, neck and a bite mark on her right chest." Another entry in her medical records read, "Patient stated her boyfriend was 'beating her up and she jumped out of the window to get away.' Patient appears scared, crying, but glad she was able to 'escape.'"

Angela was reluctant to testify. After defendant's arrest, she had gone to Utah to stay with her mother, and she did not immediately respond when Salt Lake City and Los Angeles district attorneys' investigators tried to reach her about returning to Los Angeles to testify at defendant's trial. On the stand, Angela recanted all of her previous statements. She testified that she and defendant were in a loving relationship, and that defendant had never struck her, choked her or threatened her. She testified that defendant did not cause her injuries, and they resulted from an unknown woman who was in

5

the RV with defendant, and who Angela fought in a jealous rage. She explained that her previous statements were lies that she told in an attempt to hurt defendant after finding him in the company of this unknown woman. According to her trial testimony, Angela climbed out the RV window not to escape, but because she wanted to confront the woman again and did not want defendant to know. She also testified that she had used drugs on the day in question, and that her memories of the day were confused at best.

Defense counsel rested without calling any witnesses. Defense counsel's closing argument focused on the two different versions of events provided by Angela, and contended Angela's prior statements did not prove beyond a reasonable doubt that defendant committed any crime. After a short period of deliberation, the jury reached guilty verdicts on all three counts.

Outside the presence of the jury, defendant admitted to two prior strikes, one for shooting into an occupied dwelling or vehicle and one for armed robbery. Defendant was sentenced on February 3, 2022, but the trial court recalled the sentence to correct an error and resentenced defendant on February 8, 2022 as follows: 25 years to life on the criminal threats count; three years in state prison, doubled to six years pursuant to sections 667 and 1170.12, plus two five-year enhancements for defendant's prior strikes, for a total of 16 years on the corporal injury count; and two years in state prison, doubled to four years and with two five-year enhancements for the prior strikes, for a total of 14 years, on the false imprisonment count. The court ordered the sentences on the corporal injury and false imprisonment counts served concurrently with the sentence on the criminal threats count.

Defendant filed a timely notice of appeal.

## DISCUSSION

### A. The Trial Court's Failure to Give a Unanimity Instruction Was Not Reversible Error

Defendant first contends the trial court erred by failing to give a unanimity instruction on the corporal injury and criminal threats counts. Defense counsel did not request such a jury instruction, but that failure does not waive a claim of error. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) That is because "[e]ven absent a request, the court should give the instruction 'where the circumstances of the case so dictate.' " (*Ibid.*, quoting *People v. Carrera* (1989) 49 Cal.3d 291, 311, fn. 8.) We review de novo a claim that the trial court failed to properly instruct the jury. (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 850.)

#### 1. *A Unanimity Instruction Was Not Required on the Corporal Injury Count*

Defendant asserts a unanimity instruction was required on the corporal injury count because the prosecution introduced evidence of two separate assaults on Angela—one in the morning, in connection with the birthday card, and the other in the evening, in connection with the letter Angela wrote to her daughter's father. Defendant argues that in the absence of a unanimity instruction, some jurors might have based their guilty verdict on the morning incident and others on the later one, or jurors may have based their verdict on different injuries suffered during these events, without all 12 jurors agreeing on what acts and injuries constituted the crime at issue.

"[O]ur Constitution requires that each individual juror be convinced, beyond a reasonable doubt, that the defendant

7

committed the *specific* offense he is charged with." (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 569.)  "A unanimity instruction is given to thwart the possibility that jurors convict a defendant based on different instances of conduct." (*Ibid.*)  Such an instruction " ' "eliminate[s] the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed" ' " and " ' "prevent[s] the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count." ' " (*Ibid.*, fn. omitted.)

Courts have recognized, however, that a unanimity instruction "is not required if 'the defendant offered the same defense to both acts constituting the charged crime, so no juror could have believed defendant committed one act but disbelieved that he committed the other." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 879, quoting *People v. Davis* (2005) 36 Cal.4th 510, 562.)  Some courts have described this as an exception to any need for a unanimity instruction.  (*Covarrubias*, *supra*, at p. 879; *Davis*, *supra*, at p. 562).  Other courts have suggested a harmless error analysis—that any error in failing to give a unanimity instruction is harmless "[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that [the] defendant committed all acts if he committed any . . . ." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853; accord, *People v. Diedrich* (1982) 31 Cal.3d 263, 283; *People v. Hernandez*, *supra*, 217 Cal.App.4th at p. 577.)

Here, there was no need for a unanimity instruction given that defendant offered the same defense to the alleged incidents and any failure to give the instruction was harmless. In *People v. Thompson* (1984) 160 Cal.App.3d 220, for example, the defendant was convicted of corporal injury in violation of section 273.5 after the jury heard "evidence of numerous sexual and physical assaults" committed against his wife. (*Thompson, supra,* at p. 223.) On appeal, the defendant contended the trial court had erred by failing to give a unanimity instruction, because the jurors did not necessarily all convict him for the same assault. The Court of Appeal rejected this argument, citing the unitary defense exception. "[T]he defendant here offered only one defense: that he did not hit [his wife]. The essence of the jury's task was to decide who was telling the truth, the [defendant] or his wife. There was no possibility of some jurors believing one defense, and some another." (*Id.* at p. 226.)

The unitary defense exception applies here for the same reasons. While defendant asserts he offered multiple defenses at trial, our review of the closing argument shows no such thing. Defendant did not dispute the injuries Angela suffered, but claimed he did not cause them. He offered the same defense in connection with the injuries related to the birthday card and the injuries related to the letter Angela wrote to her daughter's father. That defense was that Angela's description of what occurred inside the RV shortly after the event to third parties was not credible in light of her contradictory testimony under oath at the trial. Defense counsel argued that Angela was the only witness who knew what happened inside the RV, that Angela told two different versions of what had happened, and the

9

version to which Angela testified at trial "is what happened that day.  And as a result, you should return a verdict of not guilty."

We see no possibility that any juror, given this defense and the jury's binary choice between Angela's two versions of what occurred, could conclude that defendant had (or had not) struck and choked Angela on the morning of April 1, 2021, while reaching the opposite conclusion as to the assault occurring later that night.  We accordingly find the trial court did not err in failing sua sponte to give a unanimity instruction.  (See, e.g., *People v. Covarrubias*, *supra*, 1 Cal.5th at p. 880 [unanimity instruction was not required when defense's main argument was that key witness had been untruthful about alleged crimes, and verdict implied jury did not believe that defense]; *People v. Thompson*, *supra*, 160 Cal.App.3d at p. 226 [any error in failing to give a unanimity instruction was harmless because juror had to decide between two competing factual recitations, so "[t]here was no possibility of some jurors believing one defense, and some another"].)[4]

---

[4] A further exception provides that "no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time' [citation]." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) Because the unitary defense exception applies here, we do not address the parties' arguments concerning whether the continuous-course-of-conduct exception is also applicable.

### 2. *A Unanimity Instruction Was Not Required on the Criminal Threats Count*

Defendant's argument that a unanimity instruction was required on the criminal threats count is similarly unpersuasive. Defendant asserts the instruction was required because the prosecution presented two discrete instances of defendant threatening Angela—once in the morning when he threatened to kill her for lying about her reasons for giving him a birthday card, and an incident at night when he threatened to kill her over his belief that Angela was planning to leave defendant and move to Utah. But a unanimity instruction was not required (and alternatively, any failure to give it harmless) because defendant offered the same defense to both events—that Angela's trial testimony showed there was no proof beyond a reasonable doubt he threatened her, and her statements to the contrary on April 2, 2021, were not credible. As is the case with the corporal injury count, given this defense no juror could believe that defendant threatened (or did not threaten) Angela in the morning of April 1, while reaching a different conclusion as to whether he did so later that night. (See, e.g., *People v. Covarrubias*, *supra*, 1 Cal.5th at p. 880; *People v. Thompson*, *supra*, 160 Cal.App.3d 220 at p. 226.)

### B. The Trial Court Did Not Impose Multiple Sentences for the Same Conduct in Violation of Section 654

Defendant argues the trial court improperly sentenced him to concurrent terms on the corporal injury and false imprisonment counts because those convictions resulted from a single indivisible course of conduct. Section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished

11

under more than one provision. . . ." (*Id.*, subd. (a).)  Section 654 therefore "precludes multiple punishments for a single act or indivisible course of conduct."  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

" ' " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.' " ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 354.)  "If [the] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'  [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Whether a defendant harbored multiple objectives is a question of fact for the trial court.  (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see also *People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 ["the law gives the trial court broad latitude" in determining "whether section 654 is factually applicable to a given series of offenses"].)  "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.)  We review that implied finding for substantial evidence.  (*People v. Brents* (2012) 53 Cal.4th 599, 618.)  "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

12

We assume for purposes of argument that defendant's violations shared common acts or were parts of an otherwise indivisible course of conduct. The question then is whether defendant harbored multiple criminal objectives. Defendant argues all of the charged crimes had a single objective, but fails to identify specifically what it was. He instead offers two possibilities—that the objective was either to force Angela to tell the truth about the birthday card or to force her to tell him she was going to leave him. Reviewing the trial court's determination in the light most favorable to respondent and presuming the existence of every fact the trial court could reasonably deduce from the evidence, we disagree there was a single objective. Substantial evidence supports a finding of multiple objectives, namely to injure Angela through a physical assault (corporal injury, count 1), to frighten her for alleged past infidelity as well as to keep her under his coercive control by threatening harm (criminal threats, count 2), and to prevent Angela from leaving him by keeping her in the RV and taking her phone away so she could not call for help (false imprisonment, count 3). Accordingly, we find no error in the trial court's decision to impose concurrent terms of imprisonment in this matter.

## C. The Trial Court Did Not Abuse its Discretion by Denying Defendant's *Romero* Motion

Defendant next contends the trial court abused its discretion when it refused to dismiss prior strikes based on his 1994 conviction for shooting at an occupied dwelling or vehicle and his 2006 conviction for armed robbery. The trial court has discretion to dismiss strikes based on prior offenses. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) In ruling on a *Romero* motion, the sentencing court "must consider whether, in light of the

13

nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The defendant bears the burden to show that the decision not to strike was irrational or arbitrary. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.) As our Supreme Court observed in *People v. Carmony* (2004) 33 Cal.4th 367, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) " '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations." (*Id*. at p. 378.)

In ruling on the *Romero* motion, the trial court acknowledged the factors it needed to consider under *People v. Williams*, *supra*, 17 Cal.4th at p. 161. The court summarized defendant's criminal history, which included the following convictions prior to the second strike 2006 robbery conviction: a 1989 conviction for transportation or sale of a controlled substance, for which defendant received probation and 240 days in jail; a 1991 arrest for participation in a criminal street gang that led to defendant's probation being revoked and a sentence of three years in state prison; a 1991 conviction for felony evading of a peace officer, for which defendant was sentenced to two years in state prison; the 1994 first strike conviction for shooting at an inhabited dwelling or vehicle, for which defendant was sentenced to three year years in state prison; and a 1996 federal conviction for armed bank robbery for which he was sentenced to 115

14

months in prison (and for which he later served an additional nine months when his federal supervised release was revoked). Defendant was on parole at the time he assaulted Angela.

Given these facts, the court found it could not "say that [defendant] is outside the spirit of the [T]hree [S]trikes law. He is a recidivist who kept repeating his criminal conduct. As I said before, even after serving lengthy prison sentences, he did re-offend. I think that if I were to strike a strike in this case, that would be an abuse of my discretion based on the state of the law. So I'm going to deny the *Romero* motion."

A trial court abuses its discretion in refusing to dismiss a prior strike when it was not aware of its discretion to dismiss, where it considered impermissible factors in refusing to dismiss, or where the resulting sentence leads to an arbitrary, capricious or patently absurd result. (*People v. Carmony, supra*, 33 Cal.4th at p. 375.) None of that occurred here, and we find no reversible error in the trial court's ruling. The court was aware that it had the power to dismiss a strike, and considered only permissible factors when exercising its discretion. The factor that the court did emphasize—defendant's lengthy criminal history—was entirely proper. (See, e.g., *People v. Brugman* (2021) 62 Cal.App.5th 608, 640 [no abuse of discretion, citing the defendant's "continuous history of criminal conduct"]; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [reversing dismissal of prior strike where the defendant "led a continuous life of crime after the prior"].) Nor is the sentence here an arbitrary or patently absurd result.

Defendant's suggestion that his prior strikes were remote in time ignores the periods defendant was incarcerated for those offenses. The 1994 conviction resulted in a three-year prison

15

sentence, and by 1996 defendant was serving approximately nine years in federal prison for armed bank robbery. In 2006, soon after his release from federal prison, defendant reoffended, was convicted of armed robbery and was sentenced to 15 years in state prison. He was released in 2019, and shortly thereafter was returned to federal prison for nine months for violating his supervised release from his bank robbery conviction. After release from federal custody, he then committed his offenses against Angela in early 2021. Defendant's record shows a recurrent pattern of serious and often violent crime, followed by a prison sentence, followed by a new offense soon after release. Nor do we agree with defendant that the trial court abused its discretion because this was defendant's first domestic violence offense. A trial court does not abuse its discretion in denying a request to dismiss a prior strike because that strike was for a different violent crime than the one for which the defendant is now being sentenced.

Defendant finally claims the court abused its discretion by failing to accord proper weight to his age and his history of drug use. A defendant's age is not one of the mitigating factors listed in rule 4.423(b) of the California Rules of Court, and in any event "middle age, considered alone, cannot take a defendant outside the spirit of the [Three Strikes] law." (*People v. Strong* (2001) 87 Cal.App.4th 328, 332.) The court did consider that defendant was under the influence of drugs at the time he assaulted Angela, but did not identify that as a mitigating or aggravating factor in its decision. Particularly given defendant's prior narcotics related convictions, as well as the other information before the court, it was within the court's discretion to find the *Romero* motion was not justified by defendant's drug use.

16

**D. Defendant's Sentence is Not Cruel or Unusual Punishment**

Defendant contends that his 25 years to life sentence "is so grossly disproportionate to his offense that it violates the Eighth and Fourteenth Amendments of the United States Constitution as well as the California Constitution." The People contend defendant waived this argument by failing to raise it at the sentencing hearing. While a constitutional challenge to the length of sentence may be waived if not made at sentencing, we believe it prudent to address this claim given defendant's related claim of ineffective assistance of counsel.[5] (See, e.g., *People v. Martin* (1995) 32 Cal.App.4th 656, 661, disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10.)

" 'Whether a punishment is cruel and/or unusual is a question of law subject to our independent review . . . .' " (*People v. Wilson* (2020) 56 Cal.App.5th 128, 166-167.) We must give appropriate deference to the Legislature's power to determine what punishment is appropriate for crimes. (*Solem v. Helm* (1983) 463 U.S. 277, 290 [100 S.Ct. 3001, 77 L.Ed.2d 637] ["Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as

---

[5] Defendant asserts that should we find he waived his constitutional challenge to his sentence, the failure to make that argument means he received ineffective assistance of counsel. Our election to address defendant's constitutional claim on the merits, and our conclusion that the claim is without merit, renders moot defendant's ineffective assistance claim. (See *People v. Bradley* (2012) 208 Cal.App.4th 64, 90 ["Failure to raise a meritless objection is not ineffective assistance of counsel"].)

17

well as to the discretion that trial courts possess in sentencing convicted criminals"].)  As our Supreme Court has observed, "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . .  In doing so, the law creates a strong presumption that any sentence that confirms to these sentencing norms is both rational and proper." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)  Thus, reducing a sentence "is a solemn power to be exercised sparingly only when, as a matter of law, the Constitution forbids what the sentencing law compels." (*People v. Mora* (1995) 39 Cal.App.4th 607, 616.)

In deciding whether a sentence is cruel or unusual, we must determine whether the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.)  *Lynch* established a three-prong test to determine constitutionality, but defendant expressly limits his challenge to the first of the three prongs: the nature of the offense and/or the offender with particular regard to the degree of danger both present to society.

Defendant argues that "[a] 25 [years] to life sentence is disproportionate when this was [his] *first* domestic violence offense.  At trial, there [was] no evidence of any other domestic violence incidents against other victims.  It is undisputed that drugs likely fueled the toxic events of that day. . . .  All of these factors constitute the 'totality of the circumstances' that is relevant to a disproportionality analysis."

The sentence here is undoubtedly severe, but it is authorized by California law and not unconstitutionally cruel or unusual.  Our Legislature has classified "criminal threats, in

18

violation of [s]ection 422" as a " 'serious felony' " (§ 1192.7, subd. (c)(38)).  The seriousness of that felony is demonstrated by defendant's protracted physical assault and terrorizing of Angela that resulted in multiple injuries and filled her with such fear that she urinated on herself before fleeing for her life.  Defendant is a habitual offender with a lengthy criminal career involving repeated crimes of violence.  While this may be his first conviction for domestic violence, his prior crimes include bank robbery and armed robbery, both of which are "serious felonies" under section 1192.7, subdivision (d), as well as "violent felonies" under section 667.5, subdivision (c)(9).  As the trial court observed, prior to his offenses in this case, "since 1988, [defendant] has been sentenced to a total of 36 years in state [and federal] prison. . . .  He is a recidivist who kept repeating his criminal conduct.  As I said before, even after serving lengthy prison sentences, he did re-offend."

Under the Three Strikes law, defendant's sentence is based not only on his current offense but also his prior offenses.  Given the totality of defendant's criminal history up to and including the current offenses as recited earlier in this opinion, we see no merit to his claim that his sentence was so disproportionate to his crimes as to be unconstitutional.  (Compare *People v. Avila* (2020) 57 Cal.App.5th 1134 [life sentence unconstitutional where the defendant was convicted of attempting to collect "rent" from roadside fruit vendors, did not commit violence or threatened it, the crime caused $20 worth of damage, and prior convictions remote in time].)

**E.    The Serious Felony Enhancements Were Incorrect and Should be Stricken**

The trial court sentenced defendant to 16 years on the corporal injury charge (count 1) and 14 years on the false imprisonment charge (count 3), with both terms to be served concurrently to his sentence on the criminal threats charge (count 2).  Both the sentences on counts 1 and 3 included two five-year serious felony enhancements imposed pursuant to section 667, subdivision (a).  That statute provides that the enhancements are to be imposed on "[a] person convicted of a serious felony who previously has been convicted of a serious felony."  (*Ibid*.)  Defendant argues, the People agree, and we concur that neither count 1 nor count 3 involved a "serious felony," as defined in section 1192.7, subdivision (c).  Accordingly, we direct the trial court to modify defendant's sentence by striking the two five-year enhancements added to his sentences on both counts 1 and 3, which will reduce the sentences on those counts to six years and four years, respectively.

20

## DISPOSITION

The matter is remanded with directions to strike the two enhancements imposed under section 667, subdivision (a) on count 1, as well as the two similar enhancements imposed on count 3. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the stricken enhancements and to forward a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

21